467 So.2d 1163 (1985)
STATE of Louisiana, Appellee,
v.
Clarence HARDEMAN, Appellant.
No. 16783-KA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1985.
*1166 Campbell, Campbell & Johnson by James M. Johnson, Minden, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., R. Harmon Drew, Jr., Asst. Dist. Atty., Minden, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
NORRIS, Judge.
Defendant, Clarence Hardeman, was charged by Grand Jury indictment with second degree murder in violation of La. R.S. 14:30.1. A jury found him guilty as charged and he was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant now appeals his conviction and sentence advancing eight assignments of error. We affirm defendant's conviction and sentence.

FACTS
On September 18, 1983, the defendant, armed with a .38 caliber pistol, drove up to a combination grill, club and motel owned by one Carlton Williams, located on East Street in Minden, Louisiana. After arriving, the defendant encountered the victim, Don Diego Myles, who was the son of Elizabeth Alexander, a lady with whom defendant had previously lived. Myles and the defendant engaged in an argument while walking among the buildings which comprised the grill, club and motel. The discussion concerned a pistol which Myles had allegedly taken from the defendant's residence. According to the defendant's testimony, the victim stated finally, "old man you'll get a pistol" and the defendant replied, "I already got a gun" and then fired once, striking Myles in the back. The defendant was approximately 20-25 feet from Myles when he fired, and the bullet, which entered Myles' back, lacerated his aorta causing his death. After the shooting the defendant returned to his car and went home.
Deputies Jack Tucker and Jimmy Batton of the Webster Parish Sheriff's Department investigated this shooting. Upon their arrival at the scene, they found the victim lying on the ground, and were informed that the defendant Hardeman had been his assailant. Shortly thereafter, the deputies went to Hardeman's residence intending to arrest him. Upon noticing the arrival of Deputy Batton, a close personal friend, defendant walked out the front door of his house and stated, "I shot the boy because he had been stealing from me." The deputies then warned him not to say anything else until he had been read his rights. They then proceeded to place him under arrest and read him the Miranda warnings. Later that evening, after being advised of his Miranda rights a second time, defendant gave a statement in which he again admitted shooting Myles.
The defendant, a 70 year old black man, was tried by a 12 person jury in July of 1984. Defendant claimed self-defense as a justification for the shooting. After hearing all the evidence, the jury by a 10-2 vote, found him guilty of second degree murder. Pursuant to La.R.S. 14:30.1, defendant was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant has now appealed his conviction and sentence, advancing eight assignments of error.

ASSIGNMENT OF ERROR NO. 1
Defendant alleges that the trial court erred in allowing Deputy Jack Tucker to testify concerning a certain inculpatory statement and/or confession made by defendant without having been first advised of his Miranda rights.
The testimony objected to concerns the statement made by Hardeman when Deputies Tucker and Batton first arrived at Hardeman's residence and is as follows:
Q. Okay, Lt. Tucker, in the late afternoon September 18th, 1983 did you and Deputy Batton go to arrest Mr. Hardeman?
A. Yes, sir.
Q. Where did you go?
A. Went to his residence.
Q. And were was the residence?

*1167 A. It's on Midland Street I believe.
Q. Okay, when you and Deputy Batton came to the door did Mr. Hardeman say anything?
A. Well, when we drove up he was sitting on a couch. The wood door was open and the storm door was closed. It was glass and you could see him. He saw us drive up and he got up, it looked like he was talking on the phone, he got up and came outside and he said he shot "Dago" because he had been stealing from him.
Q. Was that in response to any questions that y'all had asked?
A. No, we didn't ask him anything. And then Deputy Batton told him don't say anything else until he was advised of his rights.
Q. Okay, at that time did Deputy Batton advise him of his rights?
A. Yes, sir, he did.
Q. Okay, thereafter did you and Deputy Batton ask questions of Mr. Hardeman?
A. It was later on in the night.
The trial court, after hearing the testimony and arguments of counsel outside the presence of the jury, ruled that the oral statement at issue was admissible, reasoning that it was a spontaneous statement made by defendant prior to his being interrogated or even placed under arrest.
Before a confession can be introduced in evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. It must also be established that an accused who makes a confession during a custodial interrogation was first advised of his Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. George, 371 So.2d 762 (La.1979); State v. Adams, 347 So.2d 195 (La.1977). In Miranda the United States Supreme Court observed: "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." It is apparent from Deputy Tucker's unrefuted testimony that defendant volunteered the statement complained of prior to any interrogation or deprivation of freedom. In fact, the defendant admitted making such a statement. Spontaneous, voluntary statements, not given as a result of custodial questioning or compelling influence, are admissible into evidence in spite of non compliance with Miranda's prior warning requirements. State v. Thornton, 351 So.2d 480 (La.1977); State v. Huizar, 332 So.2d 449 (La.1976); State v. Thomas, 310 So.2d 517 (La.1975); State v. Holmes, 305 So.2d 409 (La.1974); State v. Johnson, 457 So.2d 732 (La.App. 2d Cir.1984).
We conclude, after a review of the record, that the trial court was correct in its ruling that this statement was spontaneous and was not given as a result of custodial interrogation or compelling influence.
This assignment of error has no merit.

ASSIGNMENT OF ERROR NOS. 2 & 5
Defendant complains that the trial court erred in allowing the introduction of certain photographs, numbered state exhibits 4, 5, 6, 7, 21 and 22. He urges that the probative value of these allegedly gruesome photographs was outweighed by their prejudicial effect on the jury and also claims that the introduction of these photographs had a cumulative effect and they should not have been admitted into evidence.
Exhibits number 4, 5, 6 and 7 depict the body of the victim. They were taken at the Minden Medical Center Emergency Room. Exhibits number 21 and 22 are autopsy photos. Exhibit number 21 shows the angulation of the bullet and a tear drop shaped entrance wound and number 22 is a close-up of the wound seen in exhibit 21.
The admission of gruesome photos will not constitute reversible error unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Perry, 420 So.2d 139 *1168 (La.1982); State v. Lindsey, 404 So.2d 466 (La.1981); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984). Photographs that illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983); State v. Lindsey, supra; State v. Bodley, 394 So.2d 584 (La.1981); State v. Landry, 388 So.2d 699 (La.1980); State v. Eason, supra. The trial court did not commit error in allowing the admission of the complained of photographs. They are not particularly gruesome and are certainly relevant to show the clothing worn by the victim, the victim's appearance on the day of the shooting, and the wound inflicted by the bullet on the victim's body. There is no large amount of blood on the body nor is it mutilated. The exhibits complained of do not unduly prejudice the defendant. They serve the purposes of depicting for the jury what the victim looked like immediately after the shooting and served to illustrate some of the testimony of the forensic pathologist. When the probative value of the photographs is balanced against the minute possibility of their prejudicial effect on the jury, their probative value far outweighs any possible prejudicial effect. State v. Kirkpatrick, supra; State v. Lindsey, supra; State v. Eason, supra.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant asserts that the trial court erred when it refused to grant a mistrial pursuant to La.C.Cr.P. art. 770, after an allegedly improper question by the prosecutor. The pertinent testimony is as follows:
* * * * * *
MR. DREW: Okay, did any time that you talked to the defendant on the date of the robbery, did he ever say anything to you about the victim being armed...
MR. JOHNSON: Your Honor, at this time we're going to move for a mistrial.
MR. DREW: What did I say?
MR. JOHNSON: You said on the date of the robbery.
MR. DREW: Your Honor, I don't know where that came from. I'll retract that. There was no robbery, I apologize to the Court about that.
MR. JOHNSON: Your Honor, we still would move for a mistrial.
THE COURT: The motion for mistrial will be denied. The jury will be instructed to disregard that statement, any statement made as to any other offense other than what the defendant's on trial for here today.
* * * * * *
La.C.Cr.P. art. 770 states:
Upon motion of the defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; ...
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
A mistrial is considered a drastic remedy and is necessary only when the trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Edwards, 420 So.2d 663 (La.1982). Unless it is considered mandatory under the terms of article 770, the trial judge is granted discretion to determine whether a fair trial is not possible or whether an admonition is sufficient to assure a fair trial. The trial court's ruling is not to be disturbed on review absent abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1983).
Defendant claims that the prosecutor's inadvertent remark concerning a robbery *1169 falls under the provisions of La.C.Cr.P. art. 770. However, the record clearly indicates that there was no robbery involved in this second degree murder charge, nor was the defendant suspected of any robbery. It is not merely reference to another crime which invokes the protection of the article, as defendant seems to suggest; the reference must be to another crime "committed or alleged to have been committed by the defendant as to which evidence is not admissible." State v. Webb, 419 So.2d 436 (La.1982); State v. Madison, 345 So.2d 485 (La.1977).
We find that the remark made by the prosecutor does not fall within the grounds for a mistrial as stated in La.C. Cr.P. art. 770 and defendant was not entitled to a mistrial. The remark by the prosecutor was merely an inadvertent slip, and he immediately stated that there was no robbery in this case. Further, the question posed did not infer directly or indirectly that defendant had committed a robbery. This court will not set aside a verdict on the ground that improper remarks were made by the state, which do not fall within the grounds mentioned in La.C.Cr.P. art. 770, unless we are convinced the jury was influenced by such remarks and that the remarks contributed to its verdict. We are unwilling to hold that a mistrial is required because of this incidental, inadvertant and unintentional reference to a robbery instead of a killing in one line of a 112 page transcript and especially where it is abundantly clear that there was absolutely no intent by the state to directly or indirectly infer that this defendant was involved in a robbery. Compare State v. Smith, 336 So.2d 867 (La.1976); State v. Ware, 345 So.2d 33 (La.1977).
La.C.Cr.P. art. 771 deals with comments or remarks made by, inter alia, the district attorney during trial, such as here, which are irrelevant or immaterial and are of such a nature that they might conceivably create prejudice against the defendant in the minds of the jury and are not within the scope of article 770. Generally, such remarks or comments may be cured by an admonition to the jury to disregard them. State v. Batiste, 318 So.2d 27 (La.1975); State v. Devore, 309 So.2d 325 (La.1975). The comment in the present instance falls within this latter category. Here, admonishing the jury to disregard this inadvertant remark was sufficient to avoid any possible prejudice and assure the defendant a fair trial. See La.C.Cr.P. arts. 771, 921.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant urges that the trial court erred in allowing Deputy Tucker to reiterate statements made by the defendant after he was arrested, and that this line of questioning was repetitious and highly prejudicial.
The contested line of questioning concerns another confession made by the defendant while in custody on the evening of his arrest. The defendant objected to the line of questioning as repetitious. The court overruled the objection and the witness testified that the defendant had given a statement that he had shot the boy because he had been stealing from him. Deputy Tucker testified that before the defendant gave his statement, he was again given the Miranda warnings and that he indicated he understood his rights.
As we discussed in Assignment of Error No. 1, the state must prove that defendant's inculpatory statement was made with full knowledge of his Miranda rights and without vices of consent. Miranda v. Arizona, supra; State v. Green, 443 So.2d 531 (La.1983). La.R.S. 15:451. It is abundantly clear that Deputy Tucker read defendant his rights before defendant made his second confession. We agree with the trial court that this confession was freely and voluntarily given.
However, the defendant does not argue the voluntariness of the statement, but claims that Deputy Tucker's testimony was repetitious. "Cumulative testimony" is additional evidence of the same kind tending to prove the same point as *1170 other evidence already given or as other evidence to be given; it is testimony which strengthens the party's position on a conflict already existing in the evidence produced at the trial. State v. Phillips, 343 So.2d 1047 (La.1977). That evidence is regarded as merely cumulative does not always make it inadmissible. State v. Hawthorne, 345 So.2d 1170 (La.1977). The trial court may use its discretion as to cumulation of the evidence and possible prejudice toward the defendant. The lower court did not consider this evidence cumulative, but obviously considered it relevant to show that defendant's version of what happened remained the same after he was advised of his rights. Certainly, the record does not indicate that this testimony was so repetitious as to amount to an abuse of the trial court's discretion. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
In this assignment of error defendant asserts the trial court erred when it failed to find appreciable evidence of an overt act committed by the deceased, and refused to allow the defendant to present evidence of the deceased's dangerous reputation to support his claim of self-defense.
Evidence of the victim's dangerous character or threats against the accused supports a plea of self-defense because it is relevant to show that the victim was the aggressor and to show that defendant's apprehension of danger was reasonable. State v. Edwards, supra; State v. Green, 335 So.2d 430 (La.1976); State v. Lee, 331 So.2d 455 (La.1976). The basis for the admissibility of this evidence is La.R.S. 15:482: "In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
The term "overt act" as used in connection with prosecutions where the plea of self defense is involved, means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. State v. Edwards, supra; State v. Lee, supra; State v. Brown, 172 La. 121, 133 So. 383 (1931). Once evidence of an overt act or hostile demonstration is established on the part of the victim, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the victim's reasonable apprehension of danger which would justify his conduct; and (2) to help determine who was the aggressor in the conflict.
However, 15:482 requires evidence of an overt act. This has been interpreted to mean that when "appreciable evidence" is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion to infringe upon the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted him by law. State v. Edwards, supra; State v. Lee, supra.
In the instant case, the trial court specifically stated that it did not make a credibility determination upon the believability of the witnesses. The court stated that the only possible evidence of an overt act, was the self serving, conflicting testimony of the defendant himself. The defendant had testified that after he and Myles "had words" concerning a pistol allegedly stolen by Myles from the defendant's residence, Myles had begun to walk away from him. Myles then stated to the defendant "old man, you'll get a pistol" and had begun to spin around. The defendant stated that when Myles began to spin around he shot him because he believed he had a pistol on him, since it was the usual practice of people in that area to be armed. However, unlike Edwards, in which the defendant's version of the events was corroborated by considerable physical evidence and expert testimony, in the instant case the defendant's story is contradicted by the testimony of Dr. George M. McCormick, II, Coroner of Caddo Parish and Special Deputy Coroner of Webster Parish. His testimony indicated that due to the angulation of the bullet and the shape of the entrance *1171 wound, Myles was moving away from the defendant with his back to him and could not have been spinning around when he was shot. Additionally, there is no evidence in the record whatsoever that the victim was armed.
Our review of the record supports the trial court's determination that the defendant's testimony is not corroborated by physical evidence or any other evidence whatsoever. Defendant's contention is based solely on his conflicting, incredible testimony which is laced with unsupported opinions about the usual practice of the area. In fact, his story is directly contradicted by the physical evidence, the testimony of Dr. McCormick and by defendant's earlier version of the shooting in which he failed to mention any overt act or hostile demonstration by the victim. In the record before us, which does not contain the entire transcript of the proceedings of the lower court, there is no other evidence which supports defendant's testimony.
Under La.C.Cr.P. art. 914.1, the party making the motion for appeal shall request that portion of the proceedings necessary for a review in light of the assignments of error to be urged. Only that which is in the record may be reviewed by the court on appeal. State v. Oubichon, 422 So.2d 1140 (La.1982); State v. LeBlanc, 367 So.2d 335 (La.1979); State v. Augustine, 252 La. 983, 215 So.2d 634 (1968); State v. Booth, 448 So.2d 1363 (La. App. 2d Cir.1984). Since the defendant did not designate any additional portions of the record for review on appeal, any other testimony which might reasonably be supportive of defendant's version of events cannot be considered by this court. Therefore, from our review of the record, the trial court was correct in its determination that the defense presented no "appreciable evidence" of an overt act or hostile demonstration by the victim. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NOS. 7 & 8
Defendant urges that the lower court erred when it charged the jury in the following manner:
Some factors that you should consider in determining whether defendant had a reasonable belief that the killing was necessary are as follows:
(1) The possibility of avoiding the necessity of taking human life by retreat;
(2) The excitement and confusion of the occasion;
(3) The possibility of preventing danger to himself by using force less than killing; and
(4) The defendant's knowledge of his assailant's dangerous character.
Defendant claims that this language in the jury charge coupled with the court's earlier ruling prohibiting defendant from presenting evidence of the victim's dangerous character was prejudicial error to the detriment of the defendant.
In order for the defendant to properly preserve his objection to the trial judge's general charge to the jury, he must comply with the contemporaneous objection rule. An objection to the general charge is timely if made immediately after the jury is retired. State v. Mack, 403 So.2d 8 (La. 1981). The defendant properly made an objection to the general charge immediately after the jury retired, thus this issue is properly before the court.
The trial judge is required to charge the jury as to the law applicable in a case. La.C.Cr.P. art. 802. This article requires the trial judge to charge as to each and every phase of the case arguably supported by evidence whether believed by the judge or not. State v. Henry, 449 So.2d 486 (La.1984); State v. Mead, 377 So.2d 79 (La.1979); State v. Clement, 368 So.2d 1037 (La.1979).
Our review of the record reveals that the jury instructions given, viewed as a whole, adequately stated the law regarding self defense and retreat. The charge on self defense and retreat given in the instant case is virtually identical to that given in the cases of State v. Tolbert, 390 So.2d 510 (La.1980) and State *1172 v. Sanders, 431 So.2d 833 (La.App. 2d Cir. 1983), which was quoted with approval by the courts. A jury charge must be considered as a whole, and the conviction will not be reversed even on the ground of erroneous instruction unless the disputed portion, when viewed in light of the entire charge, is erroneous and prejudicial. State v. West, 419 So.2d 868 (La.1982); State v. Stramiello, 392 So.2d 425 (La.1980); State v. Sanders, supra. We find no such error in the instant jury charge. In light of the defendant's claim of self defense, the trial court was required to give an instruction concerning the law governing self defense as a justification for killing. The instruction given constituted an accurate statement of the law, despite the court's earlier ruling finding that there was no appreciable evidence of an overt act on the part of the victim. The reading of this general statement on self defense was not unusual, and viewing the trial court's entire jury charge as a whole, this statement was not erroneous or unduly prejudicial to the defendant. Accordingly, this assignment of error has no merit.
In addition to the above assignments of error, defendant complains in brief of the denial of his motion for new trial. Under a strict interpretation of the La.C.Cr.P. art. 920, this claim by the defendant is not properly before this court. However, for the sake of completeness, we will address this argument. Defendant claims the prosecution failed to prove every element of the crime, in that it failed to prove beyond a reasonable doubt that the defendant had the specific intent to kill or inflict great bodily harm, which is required to sustain a conviction for second degree murder.
The constitutional standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984). La.R.S. 14:30.1 defines second degree murder as:
... the killing of a human being:
(1) When the offender has a specific intent to kill or inflict great bodily harm ....
* * * * * *
Specific intent is defined by La.R.S. 14:10:
Criminal intent may be specific or general:
(1) Specific criminal intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.

* * * * * *
Although intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. La.R.S. 15:445. The statutory rule governing circumstantial evidence, provides that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The statutory rule is not a purely separate test from the Jackson standard, to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983).
The evidence at trial viewed in the light most favorable to the prosecution reveals that the defendant was armed when he went to speak with Myles concerning the pistol allegedly stolen from his residence. After the defendant and Myles "had words," Myles was moving away from the defendant when he stated, "old man, you'll get a pistol," at which point the defendant fired, killing Myles. Furthermore, defendant admitted he shot the victim *1173 because he believed Myles had been stealing from him.
In State v. Procell, 365 So.2d 484 (La. 1978), the court held that the pointing of a gun at a victim as it was fired was evidence of a specific intent to kill.
Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that the defendant had the requisite specific intent to kill the victim or inflict great bodily harm upon him. The defendant's contention in this regard is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.