550 So.2d 805 (1989)
STATE of Louisiana, Appellee,
v.
Joseph Lee CARTER, Appellant.
No. 20773-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1989.
*806 Andrew Vallian, Natchitoches, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Charles B. Bice, Dist. Atty., Martin S. Sanders, III, Asst. Dist. Atty., Winnfield, for appellee.
Before HALL, SEXTON and HIGHTOWER, JJ.
HALL, Chief Judge.
Defendant, Joseph Lee Carter, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1 in the shooting death of Willie Zeno on November 7, 1986, at Holmes Dairy World in Winn Parish. He was subsequently convicted in a bench trial and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals his conviction assigning the following errors:
1. It was manifest error of law for the court to find the defendant guilty of second degree murder when the evidence did not support that finding.
2. It was manifest error of law for the court to deny defendant's motion for a new trial.
3. It was manifest error of law for the court to deny defendant's motion for directed verdict.
4. It was manifest error of law for the court not to allow into evidence testimony of the victim's general reputation in the community to show defendant's reasonable apprehension of danger to himself in support of his plea of self defense.
5. It was manifest error of law for the court not to allow into evidence the court's record on the victim's prior convictions.
6. It was manifest error of law for the court not to accept the testimony of defense witness Charles Turner.
7. It was manifest error of law for the court to assume the dual role of judge and prosecutor in this case through his extensive, aggressive and intimidating manner of questioning the defendant's witnesses.
8. It was manifest error of law for the court to exclude from evidence the coroner's report.
9. It was manifest error of law for the court to disregard or give any weight to the testimony of the coroner in finding the defendant guilty of this charge.
Finding merit to defendant's assignments of error nos. 4 and 5 concerning exclusion of evidence of the victim's dangerous character, we reverse, set aside the conviction and sentence, and remand for a new trial.
Facts
On November 7, 1986, defendant and Willie Zeno, Jr. were at Holmes' Dairy World, a bar and dance hall in Winnfield, Louisiana. At approximately 8:30 p.m., they exchanged words in the parking lot of the establishment, near the building. Defendant shot Zeno, turned, and ran away.
Zeno was shot four times at close range by a small caliber gun. The testimony of Dr. Grodman who performed an autopsy indicated that Zeno was within 24 inches of the gun at the time of the shooting. Zeno was shot in both the right and left sides of his chest. Another bullet entered his right arm. The fourth shot entered the back of Zeno's neck. One or more of the bullets shattered some of the blood vessels within Zeno's chest, resulting in extensive bleeding and Zeno's death. Zeno was pronounced dead at the scene. At the time of his death, Zeno had a blood alcohol content of .286 grams percent. Sometime after Zeno's body was removed from the scene, a pocket knife was found in one of his pockets.
At the time of the incident, Zeno was serving time in the Parish jail for a conviction. He apparently had walked away from the jail, ultimately arriving at Holmes' Dairy World.
Defendant surrendered to authorities at the sheriff's office later that evening. He admitted the shooting and directed authorities to a location where the gun used in the *807 shooting was discovered, partially buried in the ground.
Defendant claimed the shooting was done in self-defense. He offered evidence that he had several earlier encounters with Zeno that day. At some point defendant left the establishment and got his pistol. He claims that Zeno approached him in the parking lot, grabbed him, and then circled him in a menacing manner. Defendant took out his pistol and warned Zeno to stay away. According to defendant's evidence, he fired when Zeno reached in his pocket as he continued to approach defendant.
Assignments of Error Nos. 4 and 5
At the time of trial, admissibility of evidence of the victim's dangerous character or threats against the accused was governed by LSA-R.S. 15:482 which provided:
"In the absence of evidence of hostile demonstration or overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."[1]
The term "overt act" as used in connection with prosecutions where self-defense is asserted, means any act of the victim which manifests to the mind of a reasonable person a present intention on the part of the victim to kill or to do great bodily harm. State v. Edwards, 420 So.2d 663 (La.1982); State v. Lee, 331 So.2d 455 (La.1976); State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). The overt act must be directed at the accused. State v. Jones, 451 So.2d 1181 (La.App. 1st Cir. 1984). Once appreciable evidence of an overt act or hostile demonstration is established, evidence of threats and of the victim's dangerous character is admissible for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify his conduct; and, (2) to help determine who was the aggressor in the conflict. State v. Hardeman, supra.
The defendant sought by his testimony, his recorded admissions, and the testimony of defense witness Turner, to show that the victim made a hostile demonstration or overt act against him. If so, the defendant was entitled to offer evidence of the victim's dangerous character and prior threats.
Throughout the trial, when defense counsel sought to ask questions related to the victim's dangerous character, threats, and criminal record, and expressed an intent to offer witnesses to establish such character, the trial court sustained objections, finding defendant had failed to establish the predicate hostile demonstration or overt act. The trial court maintained this position throughout the trial, reiterating it in its findings announced at the conclusion of the trial.
Our review of the record convinces us that defendant offered appreciable evidence of hostile overt acts and the trial court erred in excluding evidence of the victim's dangerous character and his threats against the defendant.
During the presentation of the state's case, the defendant's recorded statement made in the presence of the coroner, Dr. Williams, and Deputy Sheriff Davies was played for the trial court on joint offering of both defendant and the state. In describing the events immediately preceding the shooting the defendant stated in his recorded statement that Zeno confronted the defendant and remarked that every time he turned around there the defendant was. Zeno then started circling the defendant who stepped backward to stop the circling. After that Zeno put his hands down like he wanted to fight the defendant and then made another move like he was "going in his pocket or something." At that point the defendant issued his warning stating "You walk up on me again, I'm gonna bust you." The defendant stated that he issued three or four warnings with the gun in hand. He further stated that Zeno kept walking toward him. He knew Zeno had a knife and thought Zeno was trying to hurt him.
The defendant offered the testimony of Charles Turner to corroborate the evidence of "overt act" or "hostile demonstration" *808 by the victim. Turner testified that he was approximately two feet away from the defendant when Zeno was shot. He stated that he heard the defendant warn Zeno three or four times prior to the shooting. Further he stated that he saw Zeno reach into a pants pocket and saw something shiny emerge. The witness gave conflicting statements concerning from which pocket Zeno removed the shiny object. Defendant's back was almost against the wall. The witness further testified to at least two prior confrontations between defendant and Zeno that night.
The defendant took the stand on his own behalf. He testified as to having seen Zeno with a knife on a previous occasion. He testified to several encounters with the victim during the course of the evening in question. At one point Zeno put him "in the dozens", an expression referring to sex with his mother considered as seriously demeaning profanity in the community. At another point defendant broke up an altercation between Zeno and Charles Turner. Defendant stated that the final encounter occurred in front of the establishment. Zeno approached him, grabbed him, and spun him around. Zeno advanced toward the defendant as if looking to fight. He further stated that he warned Zeno several times not to come forward while the defendant was backing up with his back to the building. Defendant had his gun in his hand at this point in time. When Zeno continued to approach and put his hand in his pocket, defendant fired the gun.
We conclude that there was sufficient evidence to satisfy the "appreciable evidence" test set forth in State v. Edwards, supra, and State v. Lee, supra. There was evidence that the victim grabbed defendant and spun him around, that he reached into his pocket as if to draw a knife, and that he advanced on defendant after being warned. Therefore, the defendant should not have been denied the right to have the court hear the evidence of the victim's dangerous character and prior threats, evidence which might have corroborated the defendant's own testimony about his state of mind at the time of the shooting.
As we appreciate the trial court's rulings that an adequate predicate was not established, it (1) disbelieved defendant and Turner on credibility calls, and (2) felt that the victim's acts they described, even if true, were not such as would lead a reasonable person to believe the victim had a present intention to kill or do great bodily harm.
The cases hold that when appreciable evidence is in the record relevantly tending to establish the overt act, the trial court cannot exercise its discretion in a credibility determination to infringe upon the fact-determination function of the jury by disbelieving this testimony and, thus, deny the accused a defense permitted him by law. State v. Edwards, supra; State v. Lee, supra; State v. Hardeman, supra.
This was a bench trial, not a jury trial, but the stated principle applies in that where appreciable evidence of an overt act is offered, the judge should not make a credibility determination at that point so as to exclude dangerous character evidence, but should allow such evidence and then make the ultimate fact determination of whether the homicide was justifiable as committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. LSA-R.S. 14:20. The defense is as much entitled to present such evidence in a judge trial as in a jury trial.
The victim's acts described by defendant and his witness were hostile and, under the circumstances, could have led defendant to believe the victim intended to kill him or do him great bodily harm. There was "appreciable evidence" of hostile overt acts sufficient to establish the predicate for the introduction of evidence of dangerous character and threats.
The state argues that any error in excluding this evidence was harmless. Since the evidence was not admitted and the record does not show what the testimony would have revealed, we cannot say the evidence would not have affected the result of the trial and was therefore harmless *809 beyond a reasonable doubt. The substantial curtailment of defendant's statutory right to present such evidence cannot be regarded as harmless. See State v. Lee, supra.
Accordingly, having found reversible error, we remand for a new trial. As we reverse defendant's conviction for the stated reasons, it is unnecessary for us to address the defendant's remaining assignments of error.
DECREE
Defendant's conviction is reversed, his sentence is vacated, and the case is remanded for a new trial.
Reversed and remanded for a new trial.
NOTES
[1] The subject is now governed by Art. 404 of the La.Code of Evidence, effective January 1, 1989.