706 So.2d 203 (1998)
STATE of Louisiana, Appellee,
v.
Lemond WASHINGTON, Appellant.
No. 30043-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1998.
Rehearing Denied February 19, 1998.
*205 Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, for Appellant.
Richard Ieyoub, Attorney General, Jerry Jones, District Attorney, Charles Brumfield, E. Dion Young, Assistant District Attorneys, for appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
GASKINS, Judge.
The defendant, Lemond Washington, was originally indicted for second degree murder. After a jury trial, he was convicted of manslaughter, a violation of La. R.S. 14:31, and sentenced to serve thirty (30) years imprisonment at hard labor. The defendant appeals. For the reasons set forth below, we reverse the defendant's conviction and remand for further proceedings.

FACTS
On the evening of February 3, 1995, the defendant went to a skating rink in Bastrop, Louisiana, with several friends. At the skating rink, they encountered Brian Peters and his friends. Following an argument, Mr. Peters and his friends were thrown out of the skating rink. The defendant and his friends left the skating rink shortly thereafter. As the defendant left the building, Mr. Peters approached him, and words were exchanged. One of the defendant's friends, Fred Burrell, gave the defendant a handgun, and the defendant shot Brian Peters once in the chest. The defendant fled the premises with Christopher Sharkey, but he turned himself into the police later that night. The police recovered the gun from Mr. Sharkey. Brian Peters died of his gunshot wound that night.
Curtis Stephenson, a Bastrop police officer, interviewed the defendant in the early morning hours on February 4, 1995. After a free and voluntary hearing outside the presence of the jury, the court ruled that the jury would be allowed to hear the defendant's recorded statement. During his interview with the police, the defendant admitted being at the skating rink, having a handgun in his possession, and firing the gun. However, the defendant stated that he did not think anyone had been hit by the bullet. In the recorded statement, the defendant said that right before he fired the gun, Mr. Peters *206 declared that he was going to shoot the defendant. The defendant stated that Mr. Peters then reached inside his coat where Mr. Peters kept a gun, but the defendant admitted that he did not actually see a weapon.
Fred Burrell, a friend of the defendant, testified that he brought a chrome .380 handgun to the skating rink for protection and hid the gun beside a building next to the skating rink. Mr. Burrell testified that he retrieved the gun and brought it to the defendant because Mr. Peters had a gun in the defendant's face. When shown the gun which the police recovered from Mr. Sharkey, Mr. Burrell stated that it was not the same gun which he had given to the defendant; however, a criminalist with the North Louisiana Crime Lab testified that the bullet recovered from Mr. Peters' body was fired from that gun. Mr. Burrell's testimony about the shooting was inconsistent. He admitted at trial he had been smoking marijuana on the night of the shooting and he did not recall the events of the night very well.
The trial testimony is replete with discrepancies on virtually all of the events leading up to and involving the shooting. There was apparently some sort of an argument between Brian Peters and the defendant or one of the defendant's friends inside the skating rink which caused the boys to be ejected from the skating rink. However, the identity of the participants in this altercation varies from witness to witness.
There are also discrepancies in the testimony as to what happened when the defendant left the skating rink and was approached by Brian Peters. All of the witnesses to the shooting testified that when Mr. Peters left the skating rink, he and his friends walked across the street and were standing near a liquor store. Several witnesses testified that after the defendant emerged from the skating rink, this group ran back to the skating rink parking lot. Some of Mr. Peters' friends were yelling to him, "Shoot that nigger," "Kill that nigger," or "Shoot that bitch." Gerald Moore, one of Mr. Peters' friends, denied that anyone with Mr. Peters yelled anything while crossing the street from the liquor store to the skating rink. Some witnesses testified that Mr. Peters and his friends chased, caught and surrounded the defendant, but this was also denied by Gerald Moore.
Three witnesses testified that when Brian Peters approached the defendant outside the skating rink, Mr. Peters swung at the defendant, while two others testified that he actually hit the defendant with his fists. There was also testimony that during this encounter, Mr. Peters threw a bottle which actually hit Derrick Morgan.
There is conflicting testimony as to whether Brian Peters was armed that evening, specifically at the time he was shot. Fred Burrell claimed that Mr. Peters had a sawed-off shotgun, but when interviewed the day after the incident, Mr. Burrell stated it was a.22 pistol. Mr. Burrell claimed that Mr. Peters gave his gun to Gerald Moore; however, when Mr. Peters saw that the defendant had a gun, Mr. Peters snatched his gun back from Mr. Moore. Chris Sharkey testified that he saw a gun in Mr. Peters' hand, but later he stated that at the moment Mr. Peters was shot, he could only see Mr. Peters' left hand and there was no gun in that hand.
Derrick Morgan testified that when Mr. Peters crossed the street from the liquor store to the skating rink, he saw a sawed-off shotgun in Mr. Peters' possession. Mr. Morgan further stated that the gun had black tape around the handle and was about 18 to 20 inches long. Mr. Morgan admitted that he did not see the actual shooting. Eddie Lee Bryant testified that Mr. Peters had a shotgun that evening, with the barrel hanging out of the right sleeve of Mr. Peters' jacket. Mr. Bryant stated that the gun was approximately two feet long with black tape wrapped around its handle. Mr. Bryant further testified that right before Mr. Peters was shot, Mr. Moore was holding Mr. Peters' jacket with the gun in it; when Mr. Burrell handed the defendant a gun, Mr. Peters reached over and grabbed his jacket from Mr. Moore and pointed it toward the defendant; at this moment, the defendant shot Mr. Peters. Mr. Peters dropped the jacket when he was shot; Mr. Moore picked up the jacket and ran from the skating rink parking lot. *207 Although he did not see a weapon in Mr. Peters' possession, James Green also testified that after a shot was fired, Mr. Moore picked up a blue and gold jacket and ran away from the scene with it. Wayne Lee and Gerald Moore both testified that Mr. Peters did not have any type of weapon that night, specifically not at the time when he was shot, and that Mr. Moore was not holding a weapon for Mr. Peters.
There was also conflicting testimony as to whether the defendant could have gotten away from Brian Peters. Chris Sharkey, James Green, and Eddie Lee Bryant testified that they did not believe defendant could have escaped from Mr. Peters and his friends when the defendant fired the gun. Gerald Moore, on the other hand, testified that the altercation between the defendant and Mr. Peters had been broken up and that he and Mr. Peters were walking away from the defendant when the defendant came up behind them, called to Mr. Peters and shot him.
Officer Curtis Stephenson testified that no gun was found on Brian Peters and the only gun recovered was the gun believed to have been used by the defendant in the shooting. After Derrick Morgan described the sawed-off shotgun Mr. Peters was alleged to have in his possession on the night he died, the defense asked that a subpoena be issued into the record for the supposed weapon. The subpoena was for a weapon in the possession of the Bastrop Police Department in connection with an investigation on another case. The court allowed the subpoena to be filed, but it refused to allow the defense to bring the weapon into court unless it could establish an "absolute" chain of custody from the night of the event in question until that day in court. The defense objected to this ruling stating that there was not any requirement that it establish a chain of custody, and if there was a foundation laid and it was authenticated as the gun, it should be admissible.
Although the court sustained the state's objections to questions asking witnesses if they knew of Mr. Peters' reputation for carrying weapons, it eventually allowed the defense to question witnesses on their knowledge of Mr. Peters' character for violence. Fred Burrell testified that Mr. Peters was "the biggest and baddest" and everybody was scared of him. Wayne Lee, who described himself as Mr. Peters' best friend, said Mr. Peters had a violent character. Officer Dennis Johnson testified that on more than one occasion, he was called to a scene where Mr. Peters was a participant in violent conduct, that Mr. Peters was a suspect in at least one of these incidents, that Mr. Peters was arrested in at least one incident and that he would say Mr. Peters had a character for violence. Gerald Moore stated that if Mr. Peters felt like he had to, he would be violent and fight. Derrick Morgan called Mr. Peters a bully. James Green said that Mr. Peters had a propensity to fight. Eddie Lee Bryant testified that Mr. Peters had a violent reputation and that he (Mr. Bryant) was present during one occasion within one week of the shooting when Mr. Peters had threatened the defendant and that such incident had involved a weapon.
The defendant, from the time he gave a recorded statement to Officer Curtis Stephenson a few hours after the shooting through the trial, maintained that he had acted in self-defense.
The defendant was charged with second degree murder. Following a jury trial, he was convicted of manslaughter and sentenced to 30 years at hard labor. He appealed, asserting eight assignments of error. One assignment, pertaining to the trial court's refusal to allow the defense a surrebuttal in closing argument, is deemed abandoned by failure to brief. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332, 1333 (La.1978); State v. Kotwitz, 549 So.2d 351, 357 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990). Finding merit to one of the remaining assignments which constitutes reversible error, we are compelled to reverse the defendant's conviction and remand for further proceedings.[1]

*208 EVIDENCE OF VICTIM'S CHARACTER/ REPUTATION AND OF VICTIM'S THREATS
In two assignments of error, the defendant contends that the trial court erred in excluding evidence of the victim's character and reputation, as well as threats he made to the defendant.

Victim's character and reputation
Evidence of a person's character or trait is generally inadmissible to prove that he acted in conformity therewith on a particular occasion. La. C.E. art. 404(A). An exception is a homicide case where the defendant claims self-defense and at issue is whether the deceased was the aggressor and the defendant's state of mind. In such a case, evidence of the victim's dangerous character or threats against the accused is relevant because it tends to show that the victim was the aggressor and that the defendant's apprehension of danger was reasonable. State v. Edwards, 420 So.2d 663, 669 (La. 1982); State v. Montz, 92-2073, p. 2 (La.App. 4th Cir. 2/11/94), 632 So.2d 822, 825, writ denied, 94-0605 (La.6/3/94) 637 So.2d 499.
Regarding evidence on the character of the victim and other crimes, wrongs or acts, La. C.E. art. 404 provides in pertinent part as follows:
A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
....
(2) Character of victim. (a) [E]vidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible ...
....
B. Other crimes, wrongs, or acts. (1)[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith ...
....
(2) In the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused or the accused's state of mind as to the victim's dangerous character is not admissible....
The methods of proving character are contained in La. C.E. art. 405. This section, in pertinent part, provides as follows:
A. Reputation. [I]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to general reputation only....
....
C. Foundation. Before a person may be permitted to testify to the reputation of another person, a foundation must be established that the witness is familiar with that reputation.
As a condition of admissibility, the defendant must produce evidence that at the time of the incident, the victim made a hostile demonstration or committed an overt act against the defendant. The term "overt act" as used in connection with prosecutions where self-defense is asserted means any act of the victim which manifests to the mind of a reasonable person a present intention on the part of the victim to kill or to do great bodily harm. State v. Edwards, supra, 420 So.2d at 669; State v. Lee, 331 So.2d 455, 458-459 (La.1975); State v. Carter, 550 So.2d 805, 807 (La.App. 2d Cir.1989); State v. Hardeman, 467 So.2d 1163, 1170 (La.App. 2d Cir.1985). The overt act must be directed at the accused. State v. Jones, 451 So.2d 1181 (La.App. 1st Cir.1984). Once appreciable evidence of an overt act or hostile demonstration is established, evidence of threats and of the victim's dangerous character is admissible *209 for two distinct purposes: (1) to show the defendant's reasonable apprehension of danger which would justify his conduct; and, (2) to help determine who was the aggressor in the conflict. State v. Edwards, supra. at 670; State v. Hardeman, supra. at 1170.
The court properly disallowed evidence of Mr. Peters' character and prior threats made by Mr. Peters to the defendant until such time as appreciable evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense was shown. However, once this evidentiary threshold had been crossed, the court allowed testimony regarding Mr. Peters' character. Fred Burrell testified that Mr. Peters was "the biggest and baddest."[2] Officer Dennis Johnson, Derrick Morgan, James Green, and Eddie Lee Bryant all testified that Mr. Peters had a violent reputation. Even Wayne Lee and Gerald Moore, who were close friends of Mr. Peters, concurred in this assessment.
The court did not allow the defense to question witnesses on Brian Peters' reputation for carrying weapons. However, testimony elicited by these questions goes toward specific acts of Mr. Peters and not his general reputation as permitted by La. C.E. art. 405(A). Thus, the trial court did not abuse its discretion in not allowing such testimony.
This assignment of error lacks merit.

Threats by the victim
In a closely related assignment of error, the defendant contends that the trial court erred in disallowing testimony concerning threats made by the victim to the defendant or in the defendant's presence. Specifically, the defendant complains that during the testimony of two defense witnesses, Derrick Morgan and James Green, he was prohibited from eliciting testimony concerning prior threats made by the victim against the defendant. The state objected to these questions on the grounds of remoteness unless they concerned the night of the shooting and also that whether the defendant was "threatened" called for the witness to know the defendant's state of mind. During the testimony of a third witness, Eddie Lee Bryan, the court allowed him to testify only that a threat was made by the victim to the defendant and that a weapon was involved.[3] At this point, the court instructed defense counsel to "move on to something else" and stated that counsel was "going no further with this."
The predecessor to La. C.E. art. 404, La. R.S. 15:482, originally required "proof" of an overt act or hostile demonstration before evidence of the victim's threats or dangerous character was admissible. Likewise, the overt act or hostile demonstration had to be established to the satisfaction of the trial court. State v. Terry, 221 La. 1109, 61 So.2d 888, 889 (1952). However, the legislature amended La. 15:482 in 1952 to require "evidence" rather than "proof" of an overt act. "Evidence" of an overt act has been interpreted as "appreciable evidence" in the record relevantly tending to establish the overt act. When such evidence is present, the trial court cannot exercise its discretion to infringe upon the fact-determining function of the jury by disbelieving this defense testimony and thus, deny the defendant a defense permitted him by law. State v. Lee, supra, 331 So.2d at 459; State v. Edwards, supra, 420 So.2d at 669; State v. Hardeman, supra, 467 So.2d at 1170.
Therefore, while there were innumerable discrepancies in the testimony of the witnesses, once there was "appreciable" evidence of a hostile demonstration or overt act by the victim at the time of the offense, the defendant had a right to present evidence of the victim's character, prior threats of the *210 victim against the defendant, and the defendant's state of mind as to the victim's dangerous character. The weight to be accorded such evidence was for the jury, as the trier of fact, to decide.
The Louisiana Supreme Court has held that evidence of specific acts is relevant not to show the victim's character, but to show the defendant's state of mind. State v. Lee, supra, 331 So.2d at 461; See also State v. McMillian, 223 La. 96, 64 So.2d 856, 857 (1953). The defendant asserted that this was a justifiable homicide because it was committed in self-defense and, thus, his state of mind (his reasonable belief of his own danger) was a material issue in this case. La. R.S. 14:20. This statute provides, in relevant part, as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
Therefore, though prior threats and violent acts might be inadmissible as character evidence, they are admissible if defendant knew of them at the time of the offense. Threats of violence against the defendant, uttered by the deceased, and brought to the knowledge of the defendant, are relevant to show his belief of impending danger from the deceased. Wigmore on Evidence, § 247. As the objections of the state and the rulings of the trial court show, the defendant was effectively denied the right to produce evidence of prior dangerous acts of the victim.
Especially because the defendant chose not to testify, as was his constitutional right, the rulings of the trial court had the effect of depriving defendant of substantial evidence in support of proving his own state of mind, i.e., his reasonable belief that, from what he knew or had heard of Brian Peters' violent propensities, he himself was in danger of serious bodily harm when Mr. Peters came up to him after running across the street from the liquor store to the skating rink parking lot.
Having found that the trial court erred, we must now determine whether the error was harmless. The effect of the trial court's error was to deprive the defendant of the opportunity to establish the known dangerous character of the victim, insofar as resulting from a pattern of violent incidents involving the defendant and others. This evidence might have shown that defendant had a reasonable belief that he was in imminent danger of losing his life or receiving great bodily harm and that the killing was justified as self-defense. As noted above, the defendant had a right to present such evidence. The substantial curtailment of this right cannot be regarded as harmless. See State v. Lee, supra, 331 So.2d at 461; La. C.Cr.P. art. 921.
Accordingly, we reverse the defendant's conviction and remand the matter to the trial court for further proceedings.

VICTIM'S SHOTGUN
In two related assignments of errors, the defendant asserts that the trial court erred in quashing his subpoena for the shotgun that was allegedly brandished by the victim on the night of the shooting and in refusing to allow the weapon's admission into evidence. We consider this issue in light of its pertinence on remand.
During the testimony of the defense's first witness, Derrick Morgan, the defense attempted to subpoena the shotgun it believed Brian Peters possessed the night of the incident. After Mr. Morgan testified that Mr. Peters had a sawed-off shotgun in his possession the night he was shot and described the appearance of the gun, the defense asked that a subpoena be issued into the record and that a recess be taken while the shotgun was produced. The court permitted the subpoena to be filed.[4]
In a ruling on pretrial motions, the court stated that if an evidentiary basis was established showing the relevance of the shotgun, *211 it would be admissible. However, during the trial, outside the presence of the jury, the court addressed defense counsel concerning the gun:
This witness or any other witness can get up here and talk about it all he wants but unless ... an absolute chain of custody is established from the night of that event to its presence at the police department now you're not getting anywhere with it. I'll tell you that. So if you can't do that, you're wasting your time....
....
... The Court is not going to permit witnesses to come in and parade on the witness stand and say, yeah, this is a gun and I've seen this before and I know that it had tape on it and this, that and the other and you come in and show that gun to the jury. It's going to have to be connected to this crime on the date in question.
....
... Let me explain to you merely for the record so the Court of Appeal will understand this Court's thinking. If this Court's not very guarded in this kind of situation, the defendant could come up with all kind of lies and parade his friends up here and say, having found out the identity of some gun, and say it looked like this, this, and this. Bring in the gun. Show it to the jury and that's it and thereby defeat justice. This is a court of law and this Court is going to be very, very careful before it permits that kind of evidence.
Defense counsel stated that witnesses who could identify the gun saw it in Brian Peters' possession that night. While the court allowed defense counsel to file the subpoena, it refused to allow defense counsel to procure the weapon from the Bastrop Police Department because, unless the chain of custody could be proven, the court would not permit the gun to be shown to the jury, exhibited to the jury or exhibited to witnesses in front of the jury. At that time, defense counsel objected to the court's ruling and noted that it would require a change in the defense trial strategy.
"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. In order to introduce physical evidence at trial, the law requires that the object be identified. This identification may be visual (i.e., by testimony at the trial that the object exhibited is the one related to the case) or it may be by chain of custody (i.e., by establishing the custody of the object from the time it was seized to the time it was offered into evidence). State v. Sweeney, 443 So.2d 522, 528 (La.1983); State v. Anthony, 347 So.2d 483, 492 (La.1977); see also State v. Daniels, 614 So.2d 97, 108 (La. App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). The Louisiana Supreme Court has held that for an object to be admissible into evidence, it is not essential that there be evidence of the chain of custody of the object if it is identified at trial as an object related to the case. State v. Drake, 319 So.2d 427, 428 (La.1975). A visual identification of an object may show, for example, that the object is what it purports to be by virtue of its distinctive characteristics. La. C.E. art. 901(B)(4). The basic requirement for the introduction of demonstrative evidence is satisfied by evidence sufficient to support a finding that the object is what it purports to be. La. C.E. art. 901(A). For admission of demonstrative evidence, it suffices that it is more probable than not that the object is the one connected to the case. State v. Henderson, 337 So.2d 204, 206 (La.1976); State v. Frey, 568 So.2d 576, 578 (La.App. 4th Cir.1990), writ denied, 573 So.2d 1118 (La.1991). Lack of a positive identification or a defect in the chain of custody goes to the weight of the evidence rather than its admissibility. State v. Hall, 624 So.2d 927, 933 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1182 (La.1993); State v. Moore, 575 So.2d 928, 933 (La.App. 2d Cir.1991); State v. Dukes, 609 So.2d 1144, 1159 (La.App. 2d Cir.1992), writ denied, State v. Reed, 618 So.2d 402 (La.1993), writ denied, State ex rel. Shubbie v. State, 93-1421 (La.12/15/95), 664 So.2d 435. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Robertson, 421 So.2d 843, 845 (La. 1982); State v. Anderson, 554 So.2d 133, 136 *212 (La.App. 2d Cir.1989); State v. Volentine, 565 So.2d 511, 515 (La.App. 2d Cir.1990).
Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. La. C.E. art. 403. In these circumstances, the trial court was concerned about whether it was more probable than not that the object in the subpoena was the one connected to the case. However, the law shows that for an object to be admissible, it can be identified by a witness at trial as an object related to the case and it is not essential that there be evidence of the chain of custody of the object. The defense had witnesses who described the shotgun with some particularity. Not allowing these witnesses to visually identify the weapon, if they were able to do so, and requiring that the defense establish an "absolute" chain of custody of the weapon was clear error. The state would have had an opportunity to cross-examine those witnesses on the validity of that identification. The ultimate weight to be afforded the physical evidence as well as the testimony of the witnesses was for the jury, as the trier of fact, to determine. By deciding that it did not believe the witnesses could positively identify the weapon and thus not permitting the production of the shotgun, the court usurped this function of the jury.
In its brief, the state says that the trial court did not err because (1) the defense never offered the gun into evidence or sought to have anyone identify the gun, and (2) the defense did not properly preserve the issue for appeal by proffering the evidence pursuant to La. C.E. art. 103(A)(2). Although allowed to file the subpoena, the defense was prevented from procuring the actual weapon by the court. The court told defense counsel twice that it knew where the gun in the subpoena was located (Bastrop Police Department) but that the defense did not need the weapon in court. Defense counsel specifically asked the court, "Are you saying that I can't have Mr. Morgan identify this as the weapon that he saw in Brian Peters' possession?" to which the court replied, "Absolutely." All that is required by La. C.E. art. 103(A)(2) is that the substance of the evidence be made known to the court. It is obvious from the record that what the defense sought was the shotgun identified in the subpoena and alleged to have been in Brian Peters' possession on the night of February 3, 1995.
On remand, we direct that the trial court conduct a pre-trial hearing on the issue of the shotgun's relevance to these proceedings. At this hearing, the witnesses who were familiar with Brian Peters' shotgun may be examined by counsel and given the opportunity to view the subpoenaed weapon.

ACCESS TO VICTIM'S JUVENILE RECORD
By this assignment, the defendant contends that the trial court erred in allowing him access to only part of the victim's prior juvenile record. As this issue may be relevant on remand, we address it.
Under La. Ch.C. art. 412, juvenile records are generally confidential, but under subsection F(2), the records may be disclosed for good cause to any person or other court upon a particular showing that the information is relevant to a specific proceeding. Following a motion by the defendant to inspect Brian Peters' juvenile records and an in camera inspection of the records by the trial court, the court permitted the defendant access to the records to the extent of the dates and the names of seven victims from these offenses. The court allowed the state to edit the names of juvenile witnesses contained in the records. The court opined that the seven victims in the violence-related incidents were enough witnesses to testify to Brian Peters' violent tendencies for the defense.
The defendant asserts that the decision of the trial court not to order the state to disclose the names of the witnesses to Brian Peters' delinquent acts curtailed his defense because the information might support the defense's theory of self-defense and its contentions that Mr. Peters was the aggressor in the altercation at issue. Upon a showing of good cause, the trial court did allow the defendant access to the relevant portions of Mr. Peters' juvenile records. The defense presented several witnesses who *213 testified as to Mr. Peters' violent tendencies. Notably, the defense did not call as witnesses any of the seven victims disclosed to the defendant in Mr. Peters' juvenile records. The defendant has not shown that he was prejudiced in any manner by the trial court's refusal to allow him full access to Mr. Peters' prior juvenile records.
Accordingly, this assignment of error is without merit.

CONCLUSION
For the reasons assigned above, the defendant's conviction is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before HIGHTOWER, BROWN, WILLIAMS, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Because we find it necessary to reverse the defendant's conviction, we pretermit the assignment of error addressing the defendant's sentence. The defendant also requested by assignment of error that we review the record for error patent. The only error patent revealed was the trial court's failure to inform the defendant of the commencement date of the three-year period for post-conviction relief under La.C.Cr.P. art. 930.8. As our disposition requires that the defendant's sentence be vacated, the error is of no moment.
[2] Mr. Burrell was one of the first witnesses to testify in the State's case. On direct examination, he testified that he gave the defendant his weapon after Brian Peters had a gun in the defendant's face. On cross-examination, the state successfully objected to defense counsel asking him about Mr. Peters' reputation. However, Mr. Burrell had already testified at an earlier point on cross-examination that Mr. Peters was "the biggest and baddest" and that he was feared. Therefore, any error by the trial court in prohibiting defense counsel from eliciting reputation testimony from Mr. Burrell after "appreciable evidence" of an "overt act" was harmless.
[3] Although the matter is not explicit in the record, it appears that the trial court restricted questioning on threats to one week before the shooting.
[4] Apparently, the weapon requested in the subpoena was in the possession of the Bastrop Police Department having been seized four and one-half months after the shooting of Brian Peters in connection with another crime.