STEWART, J.
|2The defendant, Kenneth Palmer, was convicted of second degree murder and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals, asserting two assignments of error. For the reasons set forth below, we affirm Palmer’s conviction and sentence.
FACTS
On October 19, 2007, Palmer shot and killed Brandon Robertson. Palmer’s theory of the case was that he shot Robertson in self-defense. The following evidence was adduced at Palmer’s jury trial.
Robertson, along with his girlfriend, Felicia Taylor, and their child, lived in the Canaan Village apartment complex in Shreveport: Robertson sometimes, sold items, including illegal drugs, out of his apartment. On the day of the shooting, Robertson had some friends at his apartment, including Shelton Banks. Taylor had. left the apartment to run an errand. Banks testified that Palmer had come to Robertson’s apartment that evening to buy lasóme ecstasy pills, but when he arrived, Robertson was on the phone. Banks and another of Robertson’s friends at the apartment, Timothy Goodwin, saw Palmer approach Robertson and become agitated when Robertson would not get off the phone and speak with him. Goodwin related that Palmer, also known as “Fat Man,” demanded that Robertson “get off the phone” and “deal with me.” Goodwin said that the defendant then called Robertson an obscene name.
Robertson took offense to Palmer’s conduct and punched him. The two men then commenced fighting. During the struggle, Banks took possession of two handguns that were lying on a table in the room in order to prevent Robertson and Palmer from having access to the weapons. Robertson was known by Banks and Goodwin to carry a gun for protection of himself and his family. The guns belonged to his girlfriend.
When the fistfight eventually ended, Banks heard Palmer tell Robertson, “I’m fixing to go get my strap,” referring to his own firearm. Goodwin also heard Palmer say he was going to go get his “heat.” Banks stated that Robertson replied “why it got to be like that between us because we supposed to be boys,” or friends. According to Banks, Robertson hugged Palmer, kissed him on the cheek, and gave him four free ecstasy pills, saying “this *1102 wasn’t supposed to be for us,” meaning that the two of them shouldn’t 14be fighting. Goodwin said that Robertson was basically apologetic. He testified that Robertson said:
I’m sorry I lost my temper. I shouldn’t have hit you. Please, you know, hit me back. Let’s just squash it right now. Let’s not take it outside. Let’s leave it here. Let’s just call a truce.
Goodwin then explained that Robertson offered to give Palmer some extra ecstasy pills and was very adamant about “not taking it outside.”
Banks said that the defendant still appeared to be angry and left. Banks said that he then left the apartment with Robertson, so that the two could go to Banks’ home to retrieve some clothes. Some time later, they returned to Robertson’s apartment. Palmer was standing outside Robertson’s apartment along with two other men. The men stood outside and talked, and Banks reported that they all smoked marijuana and drank alcohol. Banks said that they were all having a “normal conversation” and that “it was like [the fight] was over with. That’s what it seemed like to me.”
Banks and Robertson then went back to Robertson’s apartment to get ready to go out to a club for Robertson’s birthday party. By this time, Robertson’s girlfriend had returned. Robertson told her of the fight that had taken place earlier that day. Palmer had left his hat in Robertson’s apartment, so Banks took it to Palmer’s girlfriend’s apartment, which was | Balso in the Canaan Village complex, and then returned to Robertson’s apartment.
After getting dressed for going out, Banks went outside and again saw Palmer leaning up against a wall nearby. When Banks approached him, he told Banks “Man, tell cuz I want to get another pill.” Palmer gave Banks $10 in cash, and Banks went back into Robertson’s apartment and gave the money to Robertson. Banks reported that he then went back outside to talk to Palmer and wait for Robertson. Robertson’s girlfriend, who was not going to the party due to her work schedule, watched Robertson get ready. She testified that she did not see that Robertson had a gun.
Banks talked with Palmer for a few minutes. Banks said that Robertson then came outside, turned his back to Banks and the defendant to lock the apartment door, and then turned around to face them. In responses to questioning from defense counsel, Banks said:
Q: And it is your statement you didn’t see a gun in his [Robertson’s] hand?
A: No.
Q: Do you know where his gun was?
A: It was in his waist.
Q: Did you ever see him pull the gun?
JfiA: No.
Banks explained that he knew that Robertson kept his gun at his waist, but testified that he did not see it when Robertson was coming out of the apartment. Banks testified that as Robertson turned away from the door toward them, in “about a split second,” Palmer drew a handgun and, without saying anything, shot Robertson twice. One bullet hit Robertson in the side of his neck; the other bullet hit him in the back. Banks saw the impact of the first round and saw blood coming from the wound.
Banks ran upon hearing the gunshots, and Palmer then began shooting at Banks, hitting him four times. He, and some bystanders, called 911. Palmer did not flee the scene; instead, he stood over Robertson. Robertson’s girlfriend ran outside and saw Palmer, with a gun in his hand, standing over Robertson. She said to *1103 Palmer, “You didn’t have to do that ... he wasn’t going to hurt you.” She said that Palmer looked at her and said “he said, ‘He was going to shoot me.’ ”
Paramedics and police arrived quickly. Shreveport Police Department (“SPD”) Officer Kevin Duck was first to arrive. He found Robertson dead on the ground and found Banks on the ground nearby, screaming for help. When paramedics arrived, they turned Robertson’s body over and discovered a handgun in Robertson’s left hand. This was the gun that Ivbelonged to Robertson’s girlfriend; she explained that Robertson typically carried the gun inside his waistband at the front of his pants. Officer Duck saw Palmer near Robertson’s body. Duck described Palmer as “very calm and collect[ed] and was really staring at me at one particular time.” He said that Palmer “didn’t really show any kind of feeling.” Palmer spoke to the officer and admitted that he had shot Robertson. Duck stated:
He said that it was stemmed over drugs, over ecstasy earlier that day, and that Brandon Robertson while they were standing out in the hallway walking towards him and he saw that he had a gun, and then Mr. Palmer pulled out his and shot both of them.
SPD Sergeant P.R. Scroggins also spoke to Palmer at the scene. He said that Palmer looked “worried” and admitted that he was the shooter.
Palmer was arrested after his admission. A revolver was recovered from him. All six rounds in the recovered gun had been fired. The gun recovered from Robertson’s body was a semiautomatic pistol. This weapon had a full magazine but an empty chamber, which showed that the gun had not been fired.
After he was arrested, Palmer made a statement to the police, which was tape recorded. Prior to trial, the state filed a notice of intent to use his statements against him. After a pretrial hearing, the trial court ruled that the state could offer the statements into evidence because they were freely and [¿voluntarily given, with the understanding that the state edit out the defendant’s remarks referring to his prior arrests. However, the state did not offer the recorded statement during its case in chief. During the defendant’s presentation of evidence, the state made a motion in limine. The defendant intended to call as a witness, Detective Gordon, the police officer who took the defendant’s recorded statement at the police station, and play the recording of the statement to the jury. The state’s motion sought to prevent the playing of the recording. The court granted the motion in limine and prevented the defendant from playing the recording unless the defendant agreed to take the stand and testify, which the defendant chose not to do. Detective Robert Gordon did testify that he took a statement from the defendant, but he did not provide details of the substance of the statement. The defendant did not make a proffer of the statement.
The jury convicted the defendant of second degree murder. The defendant filed a motion for new trial, urging that the jury should not have heard the evidence of a crime committed against Banks (i.e., that the defendant shot him four times) and that the jury should have been able to hear the defendant’s statement to police. The defendant also filed a motion for post-verdict judgment of acquittal. The trial court denied both motions and then sentenced the' defendant to the mandatory life-without-parole term Rfor second degree murder. Palmer now appeals. After the record was lodged, he filed two motions to supplement the record with material relevant to his motion for new trial. This court denied the second motion ask *1104 ing for a transcript of Palmer’s recorded statement to police because that material was not proffered in the trial court.
LAW AND DISCUSSION

Sufficiency of the Evidence

In the defendant’s second assignment of error, the defendant argues that the evidence was insufficient to convict him of second degree murder. He contends that the evidence failed to show beyond a reasonable doubt that he did not act in self-defense when he shot and killed Brandon Robertson.
When issues are raised on appeal' both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. This standard, now legislatively embodied 'in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165; State v. Dotie, 43,819 (La.App. 2 Cir. 1/14/09), 1 So.3d 833.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or. in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
When self-defense is raised as an issue by the defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State ex rel. D.P.B., 02-1742 (La.05/20/03), 846 So.2d 753; State v. Garner, 39,731 (La.App.2d Cir.9/8/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19; State v. Gaddis, 36,661 (La.App. 2d Cir.03/14/03), 839 So.2d 1258, writ denied, 03-1275 (La.05/14/04), 872 So.2d 519, cert. denied, 544 U.S. 926, 125 S.Ct. 1649, 161 L.Ed.2d 487 (2005). A homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1). A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw. La. R.S. 14:21.
When the defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense 'or in defense of others. State v. Matthews, 464 So.2d 298 (La.1985).
*1105 Evidence of a person’s character or a trait of his character, such a moral quality, is generally inadmissible for the purpose of proving that he acted in conformity therewith on a particular occasion. La. C.E. art. 404(A). An exception is a homicide case where the defendant claims self-defense 11Rand at issue is whether the deceased was the aggressor and the defendant’s state of mind. In such a case, evidence of the victim’s dangerous character or threats against the accused is relevant because it tends to show the victim was the aggressor and the defendant’s apprehension of danger was reasonable. State v. Washington, 30,043 (La.App.2d Cir.1/23/98), 706 So.2d 203.
As a condition of admissibility, the defendant must produce evidence that at the time of the incident, the victim made a hostile demonstration or committed an overt act against the defendant. The term “overt act” as used in connection with prosecutions where self-defense is asserted means any act of the victim which manifests to the mind of a reasonable person a present intention on the part of the victim to kill or to do great bodily harm. State v. Edwards, 420 So.2d 663 (La.1982); State v. Lee, 331 So.2d 455, 458-459 (La.1976); State v. Carter, 550 So.2d 805 (La.App. 2 Cir.1989); State v. Hardeman, 467 So.2d 1163 (La.App. 2 Cir.1985). The overt act must be directed at the accused at the time of the incident. State v. Jones, 451 So.2d 1181 (La.App. 1st Cir.1984). Once appreciable evidence of an overt act or hostile demonstration is established, evidence of threats and of the victim’s dangerous character is admissible for two distinct purposes: (1) to show the defendant’s reasonable apprehension of danger which would justify his ^conduct; and, (2) to help determine who was the aggressor in the conflict. State v. Edwards, supra.
In this case, the evidence clearly proved beyond a reasonable doubt that The defendant did not act in self-defense when he shot the victim. The witness who saw the shooting, Banks, testified that the physical altercation between the victim and the defendant had ended long prior to the shooting. Banks’s testimony was echoed by Goodwin, who also stated that the fight ended prior to the shooting. Although Robertson was carrying a gun when he left the apartment, Banks testified that he did not see the gun when Robertson came out of the door, and, more importantly, that the defendant shot Robertson “a split second” after Robertson locked the door and started to turn around. Banks did not see Robertson make any aggressive movement toward the defendant, and in fact thought that the defendant was going to accompany them to a party downtown.
Through photos, diagrams, and the witnesses’ testimony, the jury was made aware of the relative positions of Robertson, the defendant, and Banks at the time of the shooting. The jury also heard Banks testify that he saw the impact of the first round and saw blood coming from Robertson’s face and neck. The jury was informed that Robertson had his gun in his hand whén the paramedics arrived and turned him over, and that the defendant did not |14flee from the scene after the shooting.' The jury chose to credit Banks’s testimony that Robertson was not making an-aggressive move toward the defendant, nor was he visibly armed, when the defendant shot him. Moreover, the res gestae evidence showed that the defendant shot Banks four times in the back as he ran away, further showing that the defendant was not -shooting at Robertson because he was acting in self-defense.
. The record on appeal does not show that the jury’s decision to credit Banks’s testimony was erroneous. Through that testi *1106 mony, the. state presented sufficient evidence to prove beyond a reasonable doubt that the defendant was not acting in self-defense. Accordingly, this assignment of error is without merit.

Motion in Limine

In the defendant’s first assignment of error, he urges that the trial court erroneously granted the state’s motion in limine, which prevented him from introducing into evidence his recorded statement made to Detective Gordon at the police station. He contends that his statements to officers at the scene of the incident and his recorded statement at the police station should be considered as a unit rather than separate statements and that he was entitled to have the entirety of the statements placed before the jury under La. R.S. |1K15:450. He further argues that his recorded statement was not hearsay because, per La. C.E. art. 801(D)(2), it was effectively offered against him.
La. R.S. 15:450 states:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
La. C.E. art. 801(D)(2) states:
D. Statements which are not hearsay. A statement is not hearsay if:
(2) Personal, adoptive, and authorized admissions. The statement is offered against a party and is:
(a) His own statement, in either his individual or a representative capacity;
(b) A statement of which he has manifested his adoption or belief in its truth; or
(c) A statement made by a person authorized by him to make a statement concerning the subject.
In this case, the defendant attempted to offer his recorded statement, which presumably included some exculpatory information, into evidence without subjecting himself to cross-examination. He argues that the trial court erred in denying him the opportunity to play his recorded statement for the jury without concomitantly obligating the defendant to testify.
| lfiGenerally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. Such statement is admissible as an exception to the hearsay rule when it is an admission against interest. Thus, the defendant may not introduce his own self-serving exculpatory statements because they are hearsay. State v. Taylor, 31,227 (La.App. 2 Cir. 10/28/98), 720 So.2d 447, citing State v. Freeman, 521 So.2d 783 (La.App. 2 Cir.1988), writ denied 538 So.2d 586 (La.1989).
In this case, the defendant intended to offer his statement through the testimony of a police detective. Since he intended to offer his own statement in his defense, in no way could his use of the statement be construed as evidence “offered against him” for purposes of La. C.E. art. 801(D)(2). Therefore, the statement was plainly hearsay, and thus inadmissible unless subject to an exception.
In State v. Freeman, supra, this court concluded that a statement by the defendant made to police an hour and a half after an offense was a separate and distinct statement from a statement made at the scene of the crime, and so the second statement was inadmissible. Similarly in the instant case, the state did not edit the defendant’s inculpatory statement made to police at the scene, nor did it attempt to offer an impermissibly edited version of the recorded statement, which are acts which could have violated |17the rule of La. R.S. 15:450. The defendant’s inculpatory *1107 statements to police at the scene were distinct from his subsequent recorded statement that was made at the police station approximately a hour and a half later.
On the record before this court, the defendant has not shown error in the trial court’s ruling, which was the correct application of a long-understood principle, of law. The defendant’s arguments are without merit.
CONCLUSION
The defendant’s conviction and sentence are affirmed in all respects.
AFFIRMED.