HOLDRIDGE, J.
The defendant, Michael J. Dufrene, was charged by bill of information with three counts of forgery, violations of La. R.S. 14:72(B) (counts 1-3); and one count of theft over $1,500.00, a violation of La. R.S. 14:67(B). He pled not guilty and, following a jury trial, was found guilty as charged on counts 1-3. On count 4, he was found guilty of the responsive offense of theft with a value of $750.00 or more, but less than $5,000.00. The defendant filed a motion for new trial and in the alternative postverdict judgment of acquittal, which were denied. For each of the forgery convictions, the defendant was sentenced to seven years imprisonment at hard labor. For the theft conviction, he was sentenced to three years imprisonment at hard labor. All sentences were ordered to run consecutively. The defendant made oral and written motions to reconsider sentence, arguing that consecutive sentences were illegally harsh. In granting the motion in part, the trial court ordered that the sentence for the theft conviction run concurrently, reducing the total length of the sentence from twenty-four to twenty-one years. The sentences for the forgery convictions were ordered to remain consecutive. The defendant again objected to the consecutive sentences, which the trial court noted. The defendant also filed a *1118 pro-se motion for amendment, modification or reconsideration of sentence, which was denied. The defendant now appeals, designating five assignments of error. We affirm the convictions and sentences.
FACTS
Douglas Jiles moved and recovered pool tables and restored vintage Rolex watches. A few times, David Raiford helped Douglas Jiles move pool tables. On one particular occasion, Raiford and Jiles were on a moving job at Central Avenue Billiards in Amite. While Jiles was in the building, Raiford went inside Jiles's truck in the back parking lot and took several of Jiles's blank personal checks and a Rolex watch that was in the ashtray. According to Jiles, the watch was worth about $2,600.00.
Raiford filled out three of Jiles's checks. In the "Pay to the order of" section, Raiford wrote in the name of the defendant, who was Raiford's friend. Raiford forged Jiles's signature on each of the checks. The checks were in the amounts of $950.00, $450.00, and $500.00. Raiford then gave the checks to the defendant to cash. Raiford also gave the defendant the Rolex watch he had stolen, to sell.
On December 22, 2014, the defendant cashed two of the checks at two different banks in Hammond. This same day, the defendant went to Gold Into Cash pawn shop in Hammond and sold the Rolex watch for $200.00. The next day, on December 23, 2014, the defendant cashed the third check at one of the banks he had gone to the day before. According to the defendant, he gave all of the cash to Raiford.
On January 13, 2015, the defendant went back to Gold Into Cash to try to sell a ring. The owner of the pawn shop called the police, and the defendant was arrested. Detective Antoine Vicknair, with the Hammond Police Department, interviewed the defendant that day regarding the checks he cashed and Rolex watch he had previously pawned. The defendant told the detective he did not realize that the checks he cashed were stolen or forged, and Raiford assured him the watch was not stolen, but belonged to Raiford's cousin or uncle.
The defendant did not testify at trial.
ASSIGNMENTS OF ERROR NOS. 1 and 2
In his first and second assignments of error, the defendant argues the evidence was insufficient to support the convictions for forgery. Specifically, the defendant contends the State failed to prove he knew the checks were forged when he cashed them. In his brief, the defendant stresses that he did not sign the three checks that he cashed. The defendant argues, specifically, that there was no evidence to show that he knew the checks were forged. With no evidence to prove this essential element (with intent to defraud) of the crime of forgery, the defendant avers, the convictions cannot stand. As such, the defendant argues, the trial court erred in denying the motion for postverdict judgment of acquittal. The defendant does not challenge his theft conviction.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ; La. Code Crim. P. art. 821(B) ; State v. Ordodi , 2006-0207 (La. 11/29/06), 946 So.2d 654, 660 ; State v. Mussall , 523 So.2d 1305, 1308-09 (La. 1988). The *1119 Jack son standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. Patorno , 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. Id.
La. R.S. 14:72 provides in pertinent part:
A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.
B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.
Under the present circumstances, the defendant falls under the second paragraph of the forgery statute, since he both possessed and transferred the forged checks at the banks. The issue, thus, is whether the defendant did so with an "intent to defraud" and with knowledge that the checks were forged. See State v. Ford , 473 So.2d 931, 934 (La. App. 3rd Cir.), writ denied, 477 So.2d 1123 (La. 1985). The defendant contends that there was insufficient evidence presented at trial to show either that he had the intent to defraud or that he knew that the writing was forged.
Knowledge, like intent, must often be inferred from the totality of the circumstances of the transaction where it is an element of the crime charged. Ford , 473 So.2d at 934. The test of knowledge is not a subjective test, but rather a completely objective test, i.e. the offender is taken to know that which any reasonable person so situated would have known. Id. An intent to defraud is also an essential element of the offense of forgery.[1] The criminal intent required for forgery is the intent to defraud any person, and it suffices if the forged instrument has prejudiced or might prejudice the rights of another. An intent to profit by the act is not a necessary element of the case. Moreover, specific intent is a state of mind and need not be proved as a fact but may be inferred from the circumstances and transactions of the case. State v. Marler , 428 So.2d 954, 956 (La. App. 1st Cir.), writ denied, 433 So.2d 151 (La. 1983). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan , 94-2503 (La. 11/25/96), 684 So.2d 382, 390. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. McCue , 484 So.2d 889, 892 (La. App. 1st Cir. 1986).
The defendant's theory of innocence here is based on alleged ignorance; that is, he simply did not know he was cashing forged checks. According to the defendant, Raiford told him (the defendant) that the checks were payroll checks. When asked by Detective Vicknair why the checks were made payable to the defendant, the defendant notes in brief that he responded that he had been duped by Raiford into cashing the checks for him (Raiford)
*1120 because Raiford did not have any identification. During his interview, the defendant indicated that Raiford gave him the Rolex watch to pawn, and that Raiford had told him (the defendant) the watch was his uncle's or cousin's. When Detective Vicknair asked the defendant if he "really" believed that, the defendant responded, "Kind of. I'm gullible I guess." A juror could have reasonably discounted the defendant's assertion of mere ignorance or gullibility regarding his alleged lack of knowledge of what he was doing when he cashed three forged checks and sold a stolen watch at a pawn shop over a two-day period. His suggestion that he simply did not know any better strains the limits of plausibility, and the jury could have rationally concluded that the defendant's explanation was unreasonable and that he concocted his version of these crimes to hide his own guilt. See State v. Rault , 445 So.2d 1203, 1213 (La. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984).
According to the defendant in his interview, Raiford had been working at a bar in Amite; and the defendant thought he was cashing "paychecks" for this work done by Raiford. That Raiford personally wrote in the defendant's name in the "Pay to the order of" portion of Jiles's checks, then signed the checks with Jiles's name, would have signaled to any reasonable person something was amiss; it was not unreasonable for the jurors to infer that the defendant should have been put on notice about very questionable actions being perpetrated by Raiford, particularly in light of the defendant's knowledge that Raiford had just recently been released from prison, and was on parole for check fraud.[2] In his interview, it appeared clear the defendant had been aware of his own wrongdoing when, after agreeing to cash the first check, the defendant had told Raiford, "I'll do it this time."
Particularly telling of the defendant's awareness of his own wrongdoing is that he cashed three checks with three different tellers in two days, using two different banks. On the same day, December 22, 2014, the defendant went to two different branches of the Capitol One Bank, the Railroad Branch and the South Morrison Branch (both in Hammond) to cash checks, made payable to him, for $450.00 and $500.00 respectively. The following day, December 23, 2014, the defendant then went back to the South Morrison Branch and cashed a check, made payable to him for $950.00. Thus, on the first day, the defendant cashed two checks, which would have piqued the interest of any reasonable person as to why he was cashing two supposed payroll checks, both with the same date, on the same day. The next day, the defendant went back to a bank branch he had gone to the day before, but on this occasion, the defendant went to a different teller, suggestive of his realization that it would raise red flags with the bank.
Based on the foregoing, any rational juror could have found the defendant transferred forged checks with the intent to defraud. While it was never established whether the defendant or Raiford signed Jiles's name on the three checks that were cashed, this was immaterial, since to knowingly transfer a forged check without having forged the check oneself, also constitutes the crime of forgery. See La. R.S. 14:72(B) ; Ford , 473 So.2d at 933-34.
*1121 The defendant's theory of innocence was that Raiford duped him into cashing, in two days at two banks, three of Raiford's "payroll" checks that inexplicably were made payable to the defendant. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten , 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987). In finding the defendant guilty, the jury clearly rejected the defense's theory of innocence that he cashed three forged checks for $1,900.00 and knew nothing about the checks being forged or stolen. See Ford , 473 So.2d at 932-34 (where, despite defendant's contention that he was unaware that the check was a forgery, the court found there was more than ample evidence to prove defendant's knowledge that the check was forged, where in the defendant's presence outside a grocery store, a co-defendant wrote out a check payable to defendant for "wages" on the account of a business in the amount of $129.63, despite the fact the defendant never worked for the business, and where, after the co-defendant signed her father's name to the check, defendant went into the store, endorsed the check in the presence of the store's owner, and used the check to purchase a few items of merchandise, received the balance of the check in cash, then returned to the car and gave the co-defendant the cash).
The jury heard the testimony and viewed the evidence presented to it at trial and found the defendant guilty as charged. See Moten , 510 So.2d at 61. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins , 2003-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). Moreover, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell , 99-3342 (La. 10/17/00), 772 So.2d 78, 83.
After a thorough review of the record, we find that the evidence supports the guilty verdicts. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of forgery. See State v. Calloway , 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Accordingly, the trial court did not err in denying the motion for postverdict judgment of acquittal.
These assignments of error are without merit.
ASSIGNMENTS OF ERROR NOS. 3 and 4
In these related assignments of error, the defendant argues that the trial court erred in not allowing the defendant to produce allegedly exculpatory evidence. He further contends that the trial court erred in denying the motion for new trial based on this allegedly newly discovered evidence.
After both the State and defense counsel, James Burke, III, rested, the trial *1122 court recessed for the evening and informed the parties they would do their closing arguments the following morning. The next morning, Burke informed the trial court that the Friday before the start of trial, the prosecutor, Joey Oubre, had asked him (Burke) if he had any evidence, in particular phone texts, to turn over to him. Burke informed Oubre that he did not. Burke explained that the defendant's sister, Melissa Ordoyne, had been given possession of the defendant's cell phone, attempted to find (allegedly exculpatory) texts on the defendant's phone, but found nothing. Then, according to Burke, "late last night," Melissa "had texted some messages that were mentioned in this case." Melissa made copies of the texts and sent them to Burke. Burke then contacted Oubre about the texts. Burke asked the trial court to reopen the case so he could present these text messages.
Oubre argued that the defendant rested his case the day before and they were set for closing arguments that day and, as such, it would be improper to reopen the case. Oubre informed the trial court he had been handed a packet of paper by Burke just this morning and that they are not phone records of texts, but rather "somehow text messages that were purported to be forwarded to an email address and then somehow preserved." Oubre further objected to reopening the case because the emails, which contained alleged text messages, could not be authenticated and they were hearsay. Oubre averred it would be patently unfair to admit this evidence at this point of the trial and that Burke could proffer the evidence. Burke reminded the trial court that Melissa was still in possession of both the defendant's phone and the computer she used to ostensibly download the texts.
In denying Burke's request to reopen the trial, the trial court stated:
Sir, based on this case that has been pending for quite some time, the fact that you were well aware that this was the case that was going and not the aggravated rape case, the fact that discovery has been open all this time, has been completed. The State has done, you know, everything they could in attempting to give you the opportunity to do whatever. I regret that your client and family did not provide you the information you needed for this, but you've rested. We are set this morning for closing. It's after ten and I have a jury still sitting up there waiting. Now, that's their duty and we are all doing our duty here in open court, but I am not going to reopen the case for this. I will, however, allow you to proffer that. I will step out of court under the rules and allow that proffer to be made.
Following the reading of the guilty verdicts, Burke proffered the phone texts. The defendant filed a motion for new trial (and in the alternative a motion for postverdict judgment of acquittal), which was denied.
The defendant argues in brief that the trial court erred in denying the motion for new trial. According to the defendant, he was entitled to a new trial because the (proffered) exculpatory phone texts constituted newly discovered evidence. These texts, the defendant avers, indicated his state of mind after he cashed the forged checks and then had spoken to Raiford, and found out he was just an "innocent party in Raiford's plot." The texts, according to the defendant, would have shown that he did not have the requisite intent to commit forgery. Based on the foregoing, the defendant avers the trial court's denial of his request to reopen the case was an erroneous ruling, warranting a new trial.
*1123 Under La. Code Crim. P. art. 851(B), the court, on motion of the defendant, shall grant a new trial whenever:
* * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
A defendant seeking a new trial based on newly discovered evidence must demonstrate: 1) that the new evidence was discovered after trial; 2) that failure to discover the evidence before trial was not attributable to the defendant's lack of diligence; 3) that the evidence is material to the issues at trial; and 4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Cavalier , 96-3052 (La. 10/31/97), 701 So.2d 949, 951 (per curiam). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Brown , 522 So.2d 1110, 1118 (La. App. 1st Cir. 1988), writ denied, 548 So.2d 1222 (La. 1989). Furthermore, the trial court's denial of a motion for new trial will not be disturbed absent a clear abuse of discretion. Id.
After a careful review of the record, we cannot say that the defendant has met all the requisites for the granting of his motion for new trial based upon newly discovered evidence. Particularly, the defendant has failed to show that, notwithstanding the exercise of reasonable diligence, the evidence was not discoverable before or during trial. See La. Code Crim. P. art. 854(1).
The texts at issue, as indicated by Burke's proffered evidence, are alleged text messages sent by the defendant on his cell phone, presumably to Raiford. There is no indication in these documents as to whom these messages are being sent. Each of the thirty pages of the proffered en globo exhibit is a copy of an Outlook Mail email account with a typed sentence or two. The following is at the top of each email message: "5042708538@mms.att.net" and "You; gardensgaloregg@gmail.com." Melissa indicated at the proffer hearing that the phone number in the above message was the defendant's cell phone number; and that the above email account was one of two of the defendant's email accounts. All of the emails except for one are dated "Wed 12/24/2014"; one email is dated "Thu 12/25/2014." Five of the emails have a line just above the alleged texts that states: "You forwarded this message on 1/24/2014 8:4[2] PM." (For each of these five emails, the time changes by one minute, from 8:42 p.m. to 8:46 p.m.). All of the other emails do not contain this line indicating the date and time the message was forwarded. Some of the alleged texts state the following: "What the f--k, dude? What u got me into?"; "How did U find out about them not being his checks?"; "U told me they were for your pay check! What was it for?"
The defendant was interviewed by Detective Vicknair, with the Hammond Police Department, on January 13, 2015. During the interview, the defendant told Detective Vicknair that he thought the checks he cashed for Raiford were Raiford's paychecks for work he had done at a bar in Amite. The defendant told the detective that everything was on his (the defendant's) cell phone. Detective Vicknair testified at trial that, after obtaining the defendant's *1124 permission to search his phone, he looked through the defendant's phone and found nothing on the defendant's phone of evidentiary value regarding the instant case. Detective Vicknair then released the defendant's phone to his sister, Melissa, who had gone to the police department to pick up the phone. According to Melissa, she was in possession of the cell phone no later than one week after the defendant was arrested. The defendant's trial began January 24, 2017. Accordingly, Melissa had been in possession of the defendant's phone for over two years before the start of trial. The minutes indicate that Burke began representing the defendant as early as March 8, 2016.
In light of the above facts, we conclude that both the defendant and defense counsel had ample opportunity to learn the contents of the phone well before trial. Melissa indicated at the proffer hearing that the first time she tried to find texts on the phone, she found nothing. She also indicated she tried to use a computer to access the texts, but the computer did not work. Then, according to Melissa, the same night that counsel had rested their cases for the defendant's case, she used a different computer to find the texts. Apparently, the defendant had realized-over two years later-that his phone texts could be retrieved from any computer. Why the defendant allegedly sent his phone texts to his email account in the first instance was never explained.
Based on the foregoing, we find that the defendant failed to carry his burden of proving that his failure to learn of this so-called new evidence was not due to his lack of reasonable diligence. Whether sufficient diligence was exercised must be determined from the composite knowledge and conduct of both the accused and his counsel. State v. Prudholm , 446 So.2d 729, 736 (La. 1984). There has been no showing made by the defendant of why these alleged texts on his cellphone were not obtained within the two-year time period prior to trial. Accordingly, the derelictions by the defendant and Burke defeat any claim that the evidence presented at the conclusion of the trial (and the motion for new trial) was not discoverable with the exercise of reasonable diligence before or during the time of trial. See Prudholm , 446 So.2d at 735-36.
We would point out, as well, that the alleged texts were both unauthenticated and inadmissible hearsay. Other than the self-serving testimony of the defendant and his sister, there would have been nothing to authenticate the copies of these emails with alleged phone texts on them. Further, there was clearly nothing self-authenticating about them. See La. Code Evid. art. 902. More importantly, these alleged texts were an attempt by the defendant to offer his own (recorded) statements, which presumably included some exculpatory information. Generally, any out-of-court statement of the accused constitutes hearsay unless subject to an exception. Such statement is admissible as an exception to the hearsay rule when it is an admission against interest. Thus, the defendant could not introduce his own self-serving exculpatory statements because they are hearsay. See State v. Palmer , 45,627 (La. App. 2nd Cir. 1/26/11), 57 So.3d 1099, 1106, writ denied, 2011-0412 (La. 9/2/11), 68 So.3d 526. Since the defendant intended to offer his own texts (statements) in his defense, the texts are inadmissible hearsay as they are not being introduced as evidence "offered against him" for purposes of La. Code Evid. art. 801(D)(2). Id. The primary criterion for the admissibility of evidence-the trustworthiness and reliability of the texts-was not established. See *1125 State v. Wilson , 2015-1794 (La. App. 1st Cir. 4/26/17), 220 So.3d 35, 51-52.
For all these reasons, we find the trial court did not abuse its discretion when it denied the defendant's motion for new trial. Accordingly, these assignments of error are without merit.
ASSIGNMENT OF ERROR NO. 5
In his fifth assignment of error (erroneously numbered by the defendant as his third assignment of error), the defendant argues the trial court erred in imposing consecutive sentences and, as such, his sentences are excessive. The defendant argues in brief that the trial court erred by imposing consecutive sentences for the three forgery convictions because they arose from a common scheme or transaction, and the trial court did not offer any justification for running the sentences consecutively. He further submits that the trial court failed to adequately articulate for the record those facts specified as appropriate for consideration by law in tailoring his sentence. The defendant suggests that his culpability was minimal and that he was the "pawn" of a friend in whom he misplaced his trust. The defendant asks this court to remand the case for the imposition of concurrent sentences.
The Eighth Amendment to the United States Constitution and Article I, Section 20, of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado , 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews , 94-0842 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. Id. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown , 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. Code Crim. P. art. 894.1. State v. Lanclos , 419 So.2d 475, 478 (La. 1982). The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. State v. Jones, 398 So.2d 1049, 1051-52 (La. 1981).
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. Code Crim. P. art. 883. Thus, La. Code Crim. P. art. 883 specifically excludes from its scope sentences which the court expressly directs to be served consecutively.
*1126 Furthermore, although the imposition of consecutive sentences requires particular justification when the crimes arise from a single course of conduct, consecutive sentences are not necessarily excessive. State v. Palmer , 97-0174 (La. App. 1st Cir. 12/29/97), 706 So.2d 156, 160.
The trial court expressly directed that the three forgery sentences were to run consecutively to each other. Thus, those sentences are outside the scope of La. Code Crim. P. art. 883. See Palmer , 706 So.2d at 160. While the trial court did not provide specific reasons for imposing consecutive sentences, the record provided justification for the consecutive sentences. See Id. Each act of forgery was separate and distinct. The first two acts of forgery were committed on the same day, but at different times, at different banks, and with different tellers. The third act of forgery occurred on a different day than the first two acts. The defendant was also arrested and convicted for pawning jewelry he did not own. See Id.
Accordingly, the trial court did not abuse its discretion in imposing consecutive sentences for the three forgery convictions. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.

The reporter's comments to La. R.S. 14:11, entitled "Criminal intent, how expressed," identify forgery as an example of a specific intent crime. But see State v. Raymo , 419 So.2d 858, 859 (La. 1982) (indicating that that forgery is a general intent crime). For the purposes of this appeal, we shall determine whether the state met the more onerous burden of proving the defendant had specific intent to defraud.

The defendant told Detective Vicknair during his interview that Raiford was his boyfriend. He also told the detective that Raiford was arrested for check fraud in 2012. The defendant was shown copies of the checks he cashed during the interview, and when the detective asked the defendant who signed the checks, he stated that it looked like "David's" handwriting.