NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 KA 0922

STATE OF LOUISIANA

VERSUS

STEPHANIE D. WILSON

*Judgment Rendered:* `APR 1 6 2021`

* * * * * * * *

Appealed from the
22nd Judicial District Court
In and for the Parish of Washington
State of Louisiana
Case No. 18-CR10-138899

The Honorable William H. Burris, Judge Presiding

* * * * * * * *

Jane L. Beebe
Addis, Louisiana

Counsel for Defendant/Appellant
Stephanie Wilson

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

* * * * * * * *

BEFORE: THERIOT, WOLFE, AND HESTER, JJ.

**THERIOT, J.**

Defendant, Stephanie D. Wilson, was charged by bill of information with two counts of forgery, violations of La. R.S. 14:72.[1] She pled not guilty. After waiving her right to a jury trial, defendant was found guilty by the trial court of count two and not guilty of count one. Defendant was adjudicated a seventh-felony habitual offender, and the trial court imposed a sentence of twenty years imprisonment at hard labor. After being granted an out-of-time appeal, defendant now appeals. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

Janice Kennedy testified that she employed several caregivers to help her with the daily requirements of living made difficult by a previous car accident. Defendant was one of those caregivers. Defendant was paid by check on a weekly basis. According to Ms. Kennedy, the payroll checks were filled out by head caregiver Heather Bordelon, but were always signed by Ms. Kennedy.

One day, while processing bills and payroll, Ms. Kennedy and Ms. Bordelon noticed that approximately eleven checks were missing. Later, Ms. Kennedy obtained copies of two missing checks from her bank after they had been cashed.[2] Ms. Kennedy did not recognize either check as having been authorized or signed by her. She noted that while the signatures on the checks were similar to hers, the checks were not signed by her. Ms. Kennedy's protocol was to always issue checks in the name of the employee, whether it be a payroll check or reimbursement for an expense paid by the employee. Ms. Kennedy would put in the "memo" line the purpose of the reimbursement. Relative to the two missing checks, Ms. Kennedy never received a receipt from defendant for purchases made on Ms. Kennedy's behalf. The two checks did not contain any information in the

---

[1] Count one concerned a check written for $187.45, and count two involved a check written for $286.00.

[2] Defendant stipulated to the admission of the two checks into evidence and that she negotiated both.

2

"memo" field, and they were both made payable to cash, something Ms. Kennedy testified she did not do. Ms. Kennedy testified that she signed all of her checks, even if she did not fill in the rest of the information herself.

Heather Bordelon testified that she had known defendant for most of her life, but only worked with her for about nine months while both were employed by Ms. Kennedy. She said that she possessed no animosity or ill-will toward defendant and that defendant was the last person she would expect to try to steal from Ms. Kennedy. She did explain why two former caregivers, Jennifer Valley and Agnes Freeman, were fired, specifically noting that Ms. Freeman caused a lot of conflict, which involved the defendant. Ms. Bordelon explained it was her understanding that some checks had been written to cash before she began working as head caregiver for Ms. Kennedy, and that Ms. Kennedy's grandson had also once been accused of stealing checks as well. At the time the checks at issue were written, Ms. Bordelon was the only person authorized to be writing them, and neither check appeared to have been written by Ms. Bordelon or signed by Ms. Kennedy. She indicated that she respected defendant and therefore did not "set the defendant up" regarding the checks at issue.

Defendant's Mirandized statement to police was played for the trial court during the trial. In the recorded statement, defendant said she had worked for Ms. Kennedy for about a year. She said she was authorized to fill out checks for Ms. Kennedy for bills, but did not write payroll checks. She said she would purchase groceries, get reimbursed, and would sometimes get advances on her paycheck. She indicated she was given, and then cashed, the checks at issue. She could not remember if the memo section was filled out on all checks, nor did she remember to whom reimbursement checks were written. She admitted to having a prior drug problem, but explained she had been sober for about nine years. She could not

3

explain why there was someone else's information and phone number on the checks she cashed.

Defendant also testified at trial. She asserted that both she and Jennifer Valley were authorized to draft checks for Ms. Kennedy's signature. She also stated the memo line on the checks was not always filled out. Defendant asserted that the $286.00 check had to have been to reimburse her for groceries and that she provided a receipt for the expense. She testified that she did not write out the check for Ms. Kennedy's signature. Defendant further believed the check written for $187.45 was also to reimburse her for groceries. She recalled Ms. Freeman being present when defendant wrote out the check and Ms. Kennedy signed it. She also testified that Ms. Kennedy often advanced her money from her paycheck, so there would have been no reason to steal from her.

Defendant acknowledged she had prior criminal convictions for theft and was on parole for one of those convictions when she began working for Ms. Kennedy. She also claimed Ms. Kennedy had "very bad memory recall" and that she was not fired because of the missing checks, but for another incident. According to defendant, Ms. Kennedy's signature was not always visibly consistent due to the nature of her disability. Defendant further explained that she was in the process of regaining her nursing license and "was not about to mess that up."

Defendant acknowledged that she had received a narcotics conviction after she "got clean." She also admitted to having a conviction for issuing worthless checks, three for felony theft, several shoplifting charges, and had been accused of stealing a patient's credit card, but that charge was dropped. Defendant also testified she was banned from a Walmart in Covington due to shoplifting allegations.

4

Jennifer Valley testified at trial. She explained she was a caregiver for Ms. Kennedy and her husband. She testified that she would fill out checks for Ms. Kennedy's signature. It was her experience that sometimes Ms. Kennedy would write checks payable to "cash" and that the memo line would sometimes be left blank. She believed the signatures on the two checks at issue were made by Ms. Kennedy.

Finally, Agnes Freeman testified. She said she was a caregiver for Ms. Kennedy for about six months over a period of two years. She testified that she never saw Ms. Bordelon fill out checks for Ms. Kennedy. When asked if she ever knew Ms. Kennedy to write a check payable to "cash," Ms. Freeman responded, "No, I never did see the check after it was signed." Ms. Freeman said the signature on the $286.00 check appeared to have been written by Ms. Kennedy. She testified that she witnessed defendant fill out the check for $187.45 and Ms. Kennedy signed it to reimburse defendant for grocery expenses. That was the only check Ms. Freeman saw defendant write out for Ms. Kennedy's signature. She explained that Ms. Kennedy could be forgetful.

The two checks were written and negotiated in February 2018, and were discovered missing in either late February or early March 2018.

## ASSIGNMENT OF ERROR #1: INSUFFICIENT EVIDENCE

In assignment of error number one, defendant contends she was convicted with insufficient evidence. Specifically, defendant alleges that the State did not prove beyond a reasonable doubt that the $286.00 check at issue was fraudulently signed by the defendant, rather than properly signed by Ms. Kennedy. In support of this argument, defendant notes the memo line on both checks was left blank and both checks were made payable to cash. Consequently, defendant reasons, because she was found not guilty of one count of forgery, she was necessarily not guilty of the other.

The State argues that the trial court was presented with sufficient evidence to support the guilty verdict, and that the court made a credibility determination when evaluating the testimony of the State's witnesses against that of defendant's. In support, the State highlights inconsistencies in defendant's testimony and her prior statements to police.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also La. Code Crim. P. art. 821(B); **State v. Mussall**, 523 So.2d 1305, 1308-09 (La. 1988). The **Jackson** standard, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. **State v. Watts**, 2014-0429 (La. App. 1st Cir. 11/21/14), 168 So.3d 441, 444, writ denied, 2015-0146 (La. 11/20/15), 180 So.3d 315.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the fact finder, is sufficient to support a factual conclusion. **State v. Moultrie**, 2014-1535 (La. App. 1st Cir. 12/14/17), 234 So.3d 142, 146, writ denied, 2018-0134 (La. 12/3/18), 257 So.3d 1252. Moreover, when there is conflicting witness testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. **State v. Logan**, 2019-0590 (La. App. 1st Cir. 7/20/20), 2020 WL 4048059, at *3. Additionally, the fact that the record contains evidence that

6

conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. **State v. Morgan**, 2012-2060 (La. App. 1st Cir. 6/7/13), 119 So.3d 817, 826.

Louisiana Revised Statutes 14:72 provides in pertinent part:

A. It shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.

B. Issuing, transferring, or possessing with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.

Forgery is defined as the act of "alter[ing]... execut[ing], or authenticat[ing] any writing so that it purports...[t]o be the act of another who did not authorize that act." La. R.S. 14:72(C)(1)(a)(i). The criminal intent required for forgery is intent to defraud any person. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Such state of mind can be formed in an instant. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. **State v. Dufrene**, 2017-1496 (La. App. 1st Cir. 6/4/18), 251 So.3d 1114, 1119, writ granted in part and remanded, 2018-1174 (La. 5/28/19), 273 So.3d 301 (for resentencing). Knowledge, like intent, must often be inferred from the totality of the circumstances of a transaction where it is an element of the crime charged. The test of knowledge is not a subjective test, but rather a completely objective test, i.e., the offender is taken to know that which any reasonable person so situated would have known. **Id.**

Defendant stipulated that it was she who possessed and cashed both of the checks at issue. Thus, the only issues remaining are whether Ms. Kennedy authorized the checks to be written and signed them. It is defendant's contention that both checks were given to her with the knowledge and consent of Ms.

7

Kennedy. Following the testimony from Ms. Freeman, who said that she was present when defendant was given the $187.45 check by Ms. Kennedy, the court evidently concluded the State failed to reach its burden of proof and found defendant not guilty of forgery in count one.

However, regarding count two, the trial court heard the testimony of Ms. Kennedy who said she did not write that check, nor did she sign it. Additionally, Ms. Bordelon testified that she did not recognize the signature on the $286.00 check as belonging to Ms. Kennedy. Notwithstanding the testimony that on occasion Ms. Kennedy could be forgetful, that both checks were written to "cash," and both were missing comments on the memo line, the trial court found defendant took, filled out, and signed a check without authorization, later cashing the check by purporting it to be the act of Ms. Kennedy. We note that Ms. Kennedy and Ms. Bordelon testified as to having no ill feelings toward defendant, and that Ms. Valley and Ms. Freeman had been terminated from Ms. Kennedy's employ.

In reviewing the evidence, we cannot say that the fact finder's determination was irrational under the facts and circumstances presented. See **State v. Ordodi**, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662. Any rational fact finder could have found either that defendant transferred a forged check with the intent to defraud or that defendant signed the $286.00 check with the intent to defraud. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the fact finder. **State v. Calloway**, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). This assignment of error is without merit.

### ASSIGNMENT OF ERROR #2: EXCESSIVE SENTENCE

In her second assignment of error, defendant argues a twenty-year term of imprisonment at hard labor was excessive. Though recognizing that it was the

8

mandatory minimum contemplated by the habitual offender law, she claims the trial court should have departed from that minimum.[3] Noting her years of recovery from addiction, defendant claims this is "a barbaric sentence for a minor infraction imposed upon a woman with no history of any crimes of violence." Defendant cites for support a recent dissent in **State v. Bryant**, 2020-00077 (La. 7/31/20), 300 So.3d 392, 393, in which Chief Justice Johnson criticized a life sentence for a fifth-felony habitual offender who attempted to steal hedge clippers.

The State first notes that defendant failed to move for reconsideration of sentence, and is thus precluded from raising excessiveness on appeal. Nevertheless, the State reasons that, given defendant's criminal history and habitual offender adjudication, the mandatory minimum sentence was not excessive.

The record does not contain an oral or written motion to reconsider sentence. Louisiana Code of Criminal Procedure article 881.1(E) provides that the failure to file or make a motion to reconsider sentence precludes defendant from raising an excessive sentence argument on appeal. Under the clear language of La. Code Crim. P. art. 881.1(E), failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See **State v. Mims**, 619 So.2d 1059 (La. 1993) (per curiam). Accordingly, defendant is procedurally barred from having her challenge to the sentence reviewed by this court on appeal. **State v. Hamilton**, 2019-1206 (La. App. 1st Cir. 2/21/20), 297 So.3d 782, 789, writ denied, 2020-00608 (La. 11/10/20), 303 So.3d 1046. This assignment of error is without merit.

---

[3] Whoever commits the crime of forgery shall be fined not more than five thousand dollars, or imprisoned, with or without hard labor, for not more than ten years, or both. La. R.S. 14:72(D). As a seventh-felony offender, La. R.S. 15:529.1(A)(4)(a) provides that "[t]he person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life."

## CONCLUSION

For the reasons set forth herein, the defendant's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**